```
UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
------------------------------------------------------------------x
CHERYL MANZONE and STEVEN
MANZONE,
                                                                        MEMORANDUM
                                    Plaintiffs,                         DECISION AND ORDER
                                                                        17 CV 277 (SIL)
     -against-

WAL-MART STORES, INC. d/b/a MILFORD
WAL-MART SUPER CENTER,

                                    Defendant.
------------------------------------------------------------------x
```

**STEVEN I. LOCKE, United States Magistrate Judge:**

Presently before the Court in this negligence-slip-and-fall diversity action is Defendant's, Wal-Mart Stores, Inc. d/b/a as Milford Wal-Mart Super Center ("Defendant" or "Wal-Mart") opposed motion *in limine* to preclude certain damages claims and/or testimony from: (a) Plaintiff's biomechanics expert Angela D. DiDomenico, Ph.D., or if her testimony is permitted, she should nevertheless be precluded from offering evidence concerning whether Wal-Mart failed to comply with its own internal safety standards; and (b) Keith Cartmill, M.D., the physician who treated Plaintiff Cheryl Manzone ("Plaintiff" or "Manzone") in the emergency room immediately after she fell at Wal-Mart, and James Liguori, M.D., a neurologist who treated Plaintiff six days after she fell.[1]  *See* DE [60]–[65].  For the reasons set forth

---

[1] Although the motion with respect to Dr. DiDomenico and Drs. Cartmill and Liguori is made in the alternative, seeking either to preclude certain damages claims and/or to preclude testimony from these individuals, it is not possible for the Court to assess the propriety of each damages claim on the motion papers, and so the Court addresses its decision to the witnesses only.

1

below, the motion is granted in part and denied in part, and the parties shall appear on October 15, 2020 at 10:00 a.m. for a phone conference to set a trial date.[2]

## I. BACKGROUND

This action involves an accident in which Plaintiff Cheryl Manzone slipped and fell on September 23, 2016 while shopping at Wal-Mart, located in Milford, Pennsylvania, allegedly as the result of Defendant's negligence. *See* Complaint ("Compl."), DE [1]. Specifically, Manzone alleges that she was walking down an aisle at Wal-Mart, where there were no signs posted regarding a wet floor, or to exercise caution, when she slipped on a wet substance placed there by Defendant. DE [34], Defendant's Statement of Material Facts Pursuant to Local Rule 56.1 ¶ 1; DE [33-3] (submitted with prior motion practice); Plaintiffs' Response to Defendant's Interrogatories ¶¶ 5-6. As a result, Plaintiff claims that she suffered the following damages: CVA (cerebral vascular accident), left hemispheric infarct, facial palsy, partial paralysis (total or near total paralysis of lower face), right side face droop,

---

[2] The Court notes that the motion is styled as a motion *in limine* and for partial summary judgment. Defendant's motion papers fail to comply with Local Civil Rule 56.1 for the United States District Courts for the Eastern and Southern Districts of New York, and so to the extent the motion could otherwise be characterized as one for summary judgment, it is denied on this basis. *T.Y. v. N.Y.C. Dep't of Educ.*, 584 F.3d 412, 417-18 at *2 (2d Cir. 2009); *Davis v. Town of Hempstead*, 14-CV-903, 2019 WL 235644 (E.D.N.Y. Jan. 16, 2019); *Bristol v. Schenk*, CV 14-6647, 2017 WL 9485715 (E.D.N.Y. Jul. 31, 2017) (recommending denial of summary judgment motion due to failure to comply with Local Civil Rule 56.1); *see KBM World Wide, Inc. v. Hangover Joe's Holding Corp.*, CV 15-7254, 2017 WL 685606 at *2 (E.D.N.Y. Feb. 21, 2017) ("The failure to file a Rule 56.1 Statement, is, on its own, grounds for denial of a motion for summary judgment"); *Purisma v. Tiffany Entm't*, 09 Civ. 3502, 2014 WL 3828291 at *1 (E.D.N.Y. Jun. 20, 2014), *report and recommendation adopted by*, 2014 WL 3828376 (E.D.N.Y. Aug. 4, 2014) ("As courts in this district have observed repeatedly, the failure to file a Rule 56.1 Statement is grounds for dismissal of a motion for summary judgment"); *MSF Holding Ltd. v. Fiduciary Trust Co. Int'l*, 435 F. Supp. 2d 285, 304-05 (S.D.N.Y. 2006) (denying summary judgment where movant failed to submit Rule 56.1 statement); *Antwi v. Health & Human Sys. (Centers) F.E.G.S.*, 13 Civ. 835, 2014 WL 4548619 at *4-5 (S.D.N.Y. Sept. 15, 2014) (denying summary judgment motion for failure to comply with Local Civil Rule 56.1).

dysarthria, left hand weakness, right leg drift, decreased strength, decreased sensation, impaired balance, impaired postural control, short term memory impaired, decreased functional mobility due to weakness, ataxic gait-requiring cane, difficulty raising eyebrows-drawing eyebrows together-wrinkling nose-smiling, numbness of both feet, left leg pain, severe pain in back-left-leg-hip, headaches, stuttering, hands are extremely shaky and not capable of painting or writing, Blum Rosa rail radiculopathy and aggravation and exacerbation of pre-existing multilevel lumbar spondylosis with advanced canal stenosis most severe at L3-L4 secondary to facet arthroscopic, ligamentous hypertrophy, minimal disc bulging as well as developmental stenosis. Joint Pretrial Order, [DE] 58 at ¶ XI (Damages).

Presently before the Court is whether Plaintiff's expert and two treating physicians may offer certain testimony at trial, and whether Defendant's internal safety standards may be submitted as evidence.

## II. LEGAL STANDARD FOR MOTION IN LIMINE

"The purpose of a motion in limine is to allow the trial court to rule in advance of trial on the admissibility and relevance of certain forecasted evidence." *Jean-Laurent v. Hennessy*, 840 F. Supp. 2d 529, 536 (E.D.N.Y. 2011) (citing *Luce v. United States*, 469 U.S. 38, 40 n.2 105 S. Ct. 460, 463 n.2 (1984)). Evidence should only be excluded if it is inadmissible on all potential grounds. *See Porter v. Home Depot U.S.A., Inc.*, 12-cv-4595, 2015 WL 128017 at *2 (E.D.N.Y. Jan. 8, 2015); *United States v. Paredes*, 176 F. Supp. 2d 179, 181 (S.D.N.Y. 2001). Courts considering a motion *in limine* may reserve decision until trial in order to place the motion in the appropriate

3

factual context. *Jean-Laurent*, 840 F. Supp. 2d at 536; *see Nat'l Union Fire Ins. Co. v. L.E. Myers Co. Grp.*, 937 F. Supp. 276, 283 (S.D.N.Y. 1996). The court's ruling is also "subject to change when the case unfolds, particularly if the actual testimony differs from what was [expected]." *Luce*, 469 U.S. at 41, 105 S. Ct. at 463.

Evidence must be relevant in order to be admissible at trial. Fed. R. Evid. 402. Evidence is relevant if it "has any tendency to make a fact more or less probable than it would be without the evidence." Fed. R. Evid. 401. The standard is "very low." *United States v. White*, 692 F.3d 235, 246 (2d Cir. 2012) (quoting *United v. Al-Moavad*, 545 F.3d 139, 176 (2d Cir. 2008)). All relevant evidence is admissible unless the United States Constitution, a federal statute, the Federal Rules of Evidence, or rules prescribed by the Supreme Court provide otherwise. Fed. R. Evid. 402; *see White*, 692 F.3d at 246.

## III.  EXPERT TESTIMONY-ANGELA D. DiDOMENICO, Ph.D.

*1. Legal Standard for Expert Testimony[3]*

The Supreme Court recognizes that the admissibility of expert testimony is governed by Fed. R. Evid. 702. *See Kumho v. Tire Co., Ltd. v. Carmichael*, 526 U.S. 137, 149, 119 S. Ct. 1167, 1175 (1999); *Daubert v. Merrill Dow Pharm., Inc.*, 509 U.S. 579, 590, 113 S. Ct. 2786, 2795 (1993); *see also Lara v. Delta Int'l Mach. Corp.*, 13-

---

[3] Although the events underlying this litigation of occurred in Pennsylvania, and this Court maintains subject matter jurisdiction over this case because the parties are diverse, the issue as to admissibility of expert testimony is procedural rather than substantive, and so the Court applies the law applicable within this judicial district. *Aspen Eyewear, Inc. v. Altair Eyewear, Inc.*, 485 F. Supp. 2d 310, 318 (S.D.N.Y. 2007), *aff'd in part and rev'd in part on other grounds*, 288 Fed. App's 697 (2d Cir. Aug. 1, 2008) ("Because the admissibility of expert testimony is a procedural issue that arises in an array of substantive areas, Second Circuit law governs the admissibility of experts' testimony in this case."); *WeddingChannel.com, Inc. v. TheKnot, Inc.*, 03 Civ. 7369, 2005 WL 165286 at *4 (S.D.N.Y. Jan. 26, 2005).

4

CV-6259, 2016 WL 1254023 at *5 (E.D.N.Y. Mar. 31, 2016) (explaining the applicable standards). Rule 702 provides:

> A witness who is qualified as an expert by knowledge, skill, experience, training, or education may testify in the form of an opinion or otherwise if:
>
> (a) the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue;
>
> (b) the testimony is based on sufficient facts or data;
>
> (c) the testimony is the product of reliable principles and methods; and
>
> (d) the expert has reliably applied the principles and methods to the facts of the case.

Fed. R. Evid. 702.

Prior to admitting expert testimony, the trial court must consider: (i) whether the witness is qualified as an expert on the topic at issue; (ii) whether the expert's opinion is based on reliable data and methodology; and (iii) whether the expert's opinion will assist the trier of fact. *Nimely v. City of New York*, 414 F.3d 381, 396-97 (2d Cir. 2005). Initially, the trial court must determine whether the expert is qualified to testify on the matter at issue, whether scientific, technical, or otherwise specialized in nature. *Lara*, 2016 WL 1254023 at *4 (citing *Almonte v. Averna Vision & Robotics, Inc.*, 128 F. Supp. 3d 729, 739 (W.D.N.Y. 2015)). In this regard, "[i]t is well-settled that an expert's opinion may be properly based on personal rather than traditional scientific methods." *Stern v. Shamas*, No. 12-CV-5210, 2015 WL 4530473 at *3 (E.D.N.Y. July 27, 2015). The court should look at the totality of the witness's qualifications when making its assessment. *Fate v. Vill. of Spring Valley*, 11 Civ. 6838, 2013 WL 2649548 at *1 (S.D.N.Y. Jun. 13, 2013); *Hollman v. Taser Int'l*, 928 F.

5

Supp. 2d 657, 667 (E.D.N.Y. 2013). Further, the expert must offer testimony that is within the scope of his or her expertise. *Stagl v. Delta Air Lines, Inc.*, 117 F.3d 76, 81 (2d Cir. 1997); *Hollman*, 928 F. Supp. 2d at 667.

With respect to the reliability of the expert's opinion, the court should consider whether the testimony: (i) is grounded in sufficient facts or data; (ii) is the product of reliable principles and methods; and (iii) indicates that the witness has applied the relevant principles and methods reliably to the facts of the case. *United States v. Williams*, 506 F.3d 151, 160 (2d Cir. 2007) (internal quotation omitted); *see Stern*, 2015 WL 4530473 at *2 (observing that the court must inquire as to whether the expert opinion "is based upon reliable data and methodology"); *Vasquez v. City of New York*, 10 Civ. 6277, 2014 WL 4388497 at *12 (S.D.N.Y. Sept. 5, 2014) (internal quotation omitted) ("[T]he trial judge [has] the task of ensuring that an expert's testimony both rests on a reliable foundation and is relevant to the task at hand."). The court's duty is to make a "preliminary assessment" as to whether the reasoning or methodology supporting the testimony at issue is scientifically valid and properly applied. *Daubert*, 509 U.S. at 592-94, 113 S. Ct. At 2796-97; *Lara*, 2016 WL 1254023 at *8. Factors to consider include, among other things, the ability to test the expert's methods and reasoning, whether the expert's theory has been subject to peer review and publication, the potential rate of error, and general acceptance in the scientific community. *Daubert*, 509 U.S. at 592-94, 113 S. Ct. at 2796-97, *Lara*, 2016 WL 1254023 at *8 (internal citations omitted). The factors however, are not a "definitive checklist" as the standard is flexible and the inquiry must suit the nature of the case.

*Amorgianos v. Nat'l R.R. Passenger Corp.*, 303 F.3d 256, 266 (2d Cir. 2002); *Lara*, 2016 WL 1254023 at * 8 (collecting cases); *see Jensen v. Cablevision Sys. Corp.*, 372 F. Supp. 3d 95, 111 (E.D.N.Y. 2019) (articulating factors).

Finally, if the expert is qualified, and his or her opinion is sufficiently reliable, the court must consider whether the testimony at issue will assist the trier of fact. *Amorgianos*, 303 F.3d at 266 (citing *Campbell v. Metro. Prop. & Cas. Ins. Co.*, 239 F.3d 179, 184 (2d Cir. 2001)). It is important to note that, where the expert's opinion usurps either the role of the judge or jury as to the applicable law or how that law should be applied to the facts of the case, the opinion does not aid the jury in making a decision—rather, it attempts to tell the jury what result to reach. *Nimely*, 414 F.3d at 397; *Stern*, 2015 WL 4530473 at *2; *Hollman*, 928 F. Supp. 2d at 668.

Applying these standards, the court's function is that of a gatekeeper. *Daubert*, 509 U.S. at 597, 113 S. Ct. at 2798; *Amorgianos*, 303 F.3d at 265; *Fate*, 2013 WL 2649548 at * 1 ("Under Rule 702 and *Daubert* . . . district courts are assigned a critical gate keeping role at the boundary between real science and junk science."); *Cedar Petrochemicals, Inc. v, Dongbu Hannong Chem. Co.*, 769 F. Supp. 2d 269, 281-82 (S.D.N.Y. 2011) ("In *Daubert*, the United States Supreme Court confirmed that trial courts should serve as sentries, preventing juries from being overwhelmed by unsupportable speculation cloaked as expertise."). Consistent with the factors set forth above, this gatekeeping role applies to scientific topics and other matters of specialized knowledge. *Kumho Tire Co.*, 526 U.S. at 141, 119 S. Ct. at 1167; *Cedar Petrochemicals*, 769 F. Supp. 2d at 282, *Lara*, 2016 WL 1254023 at *4. The court's

approach should be flexible, and the presumption is in favor of admissibility. *Borawick v. Shay*, 68 F.3d 597, 610 (2d Cir. 1995); *see Clark v. Travelers Companies, Inc.*, 16-cv-2503, 2020 WL 473616 *3 (E.D.N.Y. Jan. 29, 2020) (recognizing the Supreme Court's emphasis on flexibility when determining the admissibility of expert evidence, noting that vigorous cross-examination, presentation of contrary evidence and careful instruction on the burden of proof are the traditional means of attacking shaky but admissible expert evidence). Nevertheless, it is incumbent upon the court to analyze whether the expert's opinion derives from the type of intellectual rigor that characterizes the practice of an expert in that field. *Lara*, 2016 WL 1254023 at *5. Accordingly, where the expert's testimony is based on nothing more than speculation and guesswork, or otherwise constitutes nothing more than "junk science," such testimony must be barred. *Id.* (internal quotations and citations omitted); *see Cedar Petrochemicals*, 769 F. Supp. 2d at 282 ("[W]hen an expert opinion is based on data, a methodology, or studies that are simply inadequate to support the conclusions reached, *Daubert* and Rule 702 mandate the exclusion of that unreliable testimony.") (quoting *Amorgianos*, 303 F.3d at 266). In conducting the analysis, the court is mindful that where the expert's testimony is "connected to existing data only by the *ipse dixit* of the expert[, a] court may conclude that there is simply too great an analytical gap between the data and the opinion offered." *Gen. Elec. Co. v. Joiner*, 522 U.S. 136, 146, 118 S. Ct. 512, 519 (1997). The proponent of the expert testimony bears the burden of establishing satisfaction of these standards by a preponderance of the evidence. *Lara*, 2016 WL 1254023 at *8; *Hollman*, 928 F. Supp 2d at 666.

Ultimately, the question of admissibility is left to the sound discretion of the trial court. *Lara*, 2016 WL 1254023 at *5.

   2. *Dr. DiDomenico's proposed testimony*

According to her report, Dr. DiDomenico will testify to the following opinions:

1. On September 23, 2016, at approximately 12:19 a.m., [Plaintiff] was caused to slip and fall while walking in the action alley of the Walmart Super Center located at 220 Route 6 and 209 in Milford, Pennsylvania.

2. Cleaning, stripping, and waxing a floor creates a potentially hazardous condition that requires guarding and warnings.

3. Walmart has established standard operating procedures for cleaning, stripping, and waxing floors that include safety precautions necessary to warn and guard store occupants of hazardous area.

4. Walmart created a dangerous and hazardous condition by failing to follow their own standard operating procedures regarding guarding and warnings required while cleaning, stripping, and waxing floors.

5. The hazardous condition created during the stripping of the floor within the action alley of the Walmart Super Center was the proximate cause of [Plaintiff's] slip and fall and the injuries [she] sustained. . . .

6. Walmart was negligent in failing to provide appropriate and sufficient guards and warnings to [Plaintiff] regarding the dangerous and hazardous condition present during the stripping of the action alley floor.

DiDomenico Prof. Bio. Outline & Expert Rep. ("DiDomenico Report"), DE [60-5], at 8.

Initially, Walmart attacks the DiDomenico Report, arguing that her testimony is inadmissible because it is "not helpful in determining any fact in issue." Defendant's Memorandum of Law in Support of Its Motion in Limine ("Def. Mem."), DE [61] at 6. The incident was captured on video and so the jury can see what happened for itself. *See id.* Moreover, Defendant takes the position that the expert

9

opinion unlawfully infringes the province of the jury because it addresses matters "within the ken of the average juror." *Id*. Wal-Mart further asserts that Dr. DiDomenico is unqualified to testify about safety standards and the duty of care, and even if she is, such testimony was not properly disclosed during discovery. *Id*. Finally, Defendant argues that her opinion improperly draws legal conclusions, stating that the condition of the aisle was the "proximate cause" of Manzone's injuries and that Wal-Mart was "negligent." *Id*.

Defendant's motion is granted only to the extent that Dr. DiDomenico's opinion contains legal conclusions concerning the ultimate issues in the case that are for the jury to decide. Specifically, Dr. DiDomenico may not testify as to the "proximate cause" of Plaintiff's injuries, or that Wal-Mart was "negligent." The jury will be instructed on the law on both issues at the conclusion of the trial and they will make these determinations. The motion as to Dr. DiDomenico is denied in all other respects for the reasons set forth below.

Dr. DiDomenico is qualified as an expert to testify about slip-and-fall accidents. She is a Senior Biomechanist for an engineering firm with a Ph.D in Industrial and Systems Engineering, Human Factors Option from Virginia Tech, and a Master's degree in Industrial and Systems Engineering with an emphasis in Safety Engineering also from Virginia Tech. *See* DiDomenico Report at 6. She has completed advanced coursework in musculoskeletal biomechanics, human factors, kinesiology, physiology, ergonomics, occupational biomechanics and impact biomechanics. *See id*. Through her professional research she has become

knowledgeable about human tolerance to the areas of slip, trip and fall incidents (and conducted research on the prevention thereof, as well as injuries caused thereby), as well as techniques for evaluating mechanisms of injury. *See id.* Consistent with this experience she has published numerous articles concerning biomechanics, including articles addressing slip and fall accidents. *See id.* Based on her experience in these areas, the Court concludes that she is qualified to testify about the nature of the slip and fall accident at issue in this case, the cause of the accident, and the types of injuries that could reasonably result, all of which are relevant to Plaintiff's negligence claims and would likely assist the trier of fact in determining the issues in this case. *See Ward v. Carnival Corp.*, 17-24628-CV, 2019 WL 1228063 (S.D. Fla. Mar. 14, 2019) (denying motion *in limine* as to biomedical engineer with extensive experience in areas including biomechanics and human factors in slip and fall case); *Ervin v. Kroger*, 14-CV-262, 2015 WL 11089475 (E.D. Tex. Jun. 3, 2015) (denying motion *in limine* and admitting testimony of biomechanical engineer in slip and fall case and rejecting, *inter alia*, argument that expert opinion will not assist trier of fact where the jury will have access to the same video footage).[4]

  Moreover, Dr. DiDomenico is qualified to testify about standards of care and internal safety policies. Dr. DiDomenico's expert disclosure, including her Professional Biographical Outline, which Wal-Mart does not address, demonstrates that she has sufficient expertise with respect to safety standards to conclude that her testimony on this topic would be appropriate under Rule 702 and helpful to the jury.

---

[4] In reaching this conclusion the Court notes that Wal-Mart did not challenge Dr. DiDomenico's methodology in reaching her conclusions and so the Court does not address this issue.

11

*See generally* DiDomenico Report. Dr. DiDomenico spent ten years working at the Center for Physical Ergonomics at the Liberty Mutual Research Institute for Safety where she did work "focusing on the prevention of slips, trips and falls and determining causal factors of related injuries." *Id*. Further, she was part of an interdisciplinary team with a mission that included assessment of risk in relation to falls, and she has expertise related to construction safety, code compliance and general workplace safety, conducted investigations of workplace accidents including safety principles, and "[d]eveloped and executed testing programs to assess various potential factors of workplace accidents." *Id*. Her "Areas of Specialty" include "Construction Safety" and "Industrial Safety" and her "Professional Experience" includes analyses of building, industrial and construction codes associated with premises liability. *Id*. She has developed and conducted research projects "focusing on the prevention of slips, trips and falls and determining casual factors." *Id*. For all of these reasons, the Court concludes that Dr. DiDomenico is qualified to testify about the appropriate standard of care.

Given her expertise with respect to safety and standards of care, Dr. DiDomenico will also be permitted to testify concerning Defendant's internal safety rules. Preliminarily, the parties agree in their papers that because Plaintiff's accident occurred in Pennsylvania, presumably Pennsylvania has the most significant contacts with this dispute, and so that state's law applies. *Compare* Def. Mem., DE [61] at 7-8 (citing Pennsylvania case law) *with* Memorandum in Opposition to the Defendant's Motion in Limine and Motion for Partial Summary Judgment ("Pl.

Opp."), DE [62] at 4-6 (same) *and* Defendant's Reply on Motion in Limine ("Def. Rep."), DE [63] at 3-5 (same); *see Singer v. Eli Lilly & Co.*, 396 Fed. App's 715 (2d Cir. 2010) (applying Pennsylvania law where there is no dispute as to its application in mutlidistrict failure-to-warn case); *accord Amerisure Ins. Co. v. Laserage Tech. Corp.*, 2 F. Supp. 2d 296, 301-02 (W.D.N.Y. 1998) (applying Illinois law where Illinois had the most significant contacts to the litigation and the parties agreed that Illinois law applied); *American Record Pressing Co. v. U.S. Fidelity & Guaranty Co.*, 466 F. Supp. 1373, 1378 (S.D.N.Y. 1979) (applying Michigan law where there that state had significant contacts with the dispute and the parties agreed with its application).

Internal safety standards are relevant and admissible as to the issue of breach of duty in a negligence claim under Pennsylvania law. *See Johnson v. Home Depot*, 16-647, 2016 WL 4440249 at *4 (E.D. Pa. Aug. 8, 2016) (denying summary judgment based on the defendant's failure to adhere to its own standards); *Hasenauer v. Celotex Corp.*, 93-385, 1996 WL 481529 at *4 (E.D. Pa. Aug. 22, 1996) ("Celotex's compliance or noncompliance with the Safety Manual was relevant to, though not conclusive on, the issue of negligence) (citing *Muncie Aviation Corp. v. Party Doll Fleet, Inc.*, 519 F.2d 1178, 1180 (5th Cir. 1975) (evidence of custom within an organization is admissible as bearing on the standard of care)); *accord Dallas v. F.M. Oxford Inc.*, 381 Pa. Super 89, 96, 552 A.2d 1109, 1112 (Pa. Super. Ct. 1989) ("our own Superior Court has condoned the admission of standards, be it through expert testimony or the introduction of private and governmental regulations regarding a particular business or industry") (citations omitted).

In reaching this conclusion the Court finds the cases Wal-Mart relies upon distinguishable. In both *Hower v. Wal-Mart Stores, Inc.*, 08-1736, 2009 WL 1688474 (E.D. Pa. Jun. 16, 2009) and *Greene v. Wal-Mart Stores East, LP*, 16-6693, 2018 WL 3743025 (E.D. Pa. Aug. 6, 2018), summary judgment was granted to Defendant in slip-and-fall cases where the plaintiffs had no evidence of constructive notice of the dangerous condition. The courts specifically rejected the argument that constructive notice could be inferred solely from Wal-Mart's alleged failure to comply with its own procedures regarding how frequently to conduct safety sweeps of the stores. *See Greene*, 2018 WL 3743025 at *3 (failure to comply with policy requiring hourly safety sweeps will not defeat summary judgment where Plaintiff slipped four minutes after the dangerous condition appeared); *Hower*, 2009 WL 1688474 at *4 ("Defendant's alleged failure to perform a safety sweep says nothing about how long the spill was present. Indeed, Defendant cannot be liable for negligence by failing to identify and clean up a spill only a short time after its occurrence.").

In reaching this conclusion, both *Hower* and *Greene* state that a self-imposed policy alone does not impose a duty of care, the breach of which renders Wal-Mart liable for negligence. *Greene*, 2018 WL 3743025 at *3; *Hower*, 2009 WL 1688474 at *10 ("Wal-Mart's inspection policy does not establish a duty of care the breach of which subjects the store to liability"). This conclusion, however, is not inconsistent with the notion that such a policy may be relevant to the question of what the legal duty is when put in a proper context. In this regard, Plaintiff's expert, Dr. DiDomenico, is expected to testify as to the appropriate duty of care, and that Wal-

14

Mart's internal standards are consistent with this duty. Pl. Opp. at 5. This is a different scenario than one where a plaintiff is attempting to establish constructive notice solely through the failure to comply with an internal policy concerning safety sweeps.

Finally, having determined the relevance and admissibility of testimony concerning Wal-Mart's internal standards, the Court rejects Defendant's self-serving argument that the these standards are higher than what would otherwise be required as a matter of law, and so reference to them would necessarily confuse the jury and unfairly prejudice Wal-Mart. *See* Def. Mem. at 8 ("the jury will improperly conflate the defendant's internal rules with a legal standard of care"); Def. Rep. at 4-5. Defendant offers no support in the record for its position that its policies exceed the legal duty of care, while Plaintiff refers to her expert's testimony to the contrary. Further, Wal-Mart fails to explain why it could not use its own liability expert in this regard or sufficiently cross-examine Manzone's expert on this issue, rather than preclude the testimony altogether. For all of these reasons, Defendant's motion *in limine* to preclude testimony concerning its internal standards is denied.

Finally, as a procedural matter, the Court disagrees with Wal-Mart's position that Manzone's expert disclosure fails to sufficiently identify testimony concerning the proper standard of care. Such testimony is necessary to reach conclusions two, three, four and six above concerning Wal-Mart's creation of a hazard, how to handle this hazard, and related standard operating procedures.

15

The motion is granted however, with respect to the legal conclusions concerning the "proximate cause" of any injuries Plaintiff suffered and whether Wal-Mart was "negligent" in its maintenance of the aisle where Manzone slipped and fell. *See Gresham v. Petroleum Stopping Ctrs.*, 09-cv-00034, 2011 WL 1748569 (D. Nev. Apr. 25, 2011) (admitting expert testimony of mechanical and biomechanical engineer in slip and fall case on certain topics but precluding same expert's testimony with regard to "opinions of legal fault"); *accord* Pl. Opp. at 3 (Plaintiff agrees that Dr. DiDomenico cannot testify as to legal conclusions and she will not be asked about "proximate cause" and whether Defendant was "negligent").

## IV.   TESTIMONY OF DRS. CARTMILL AND LIGUORI

Wal-Mart also seeks to preclude the testimony of two treating physicians: Kevin Cartmill, M.D., who treated Plaintiff in the emergency room immediately after she fell, and James Ligouri, M.D., a neurologist who saw Plaintiff on numerous occasions, including six days after her accident. This portion of Defendant's motion is similarly denied.

Generally, treating physicians may testify to opinions formed during the course of treatment. *Olutosin v. Gunsett*, 14-cv-685, 2019 WL 5616889 *5 (S.D.N.Y. Oct. 31, 2019) (citing *Lewis v. Triborough Bridge Auth.*, 97 Civ. 607, 2001 WL 21256 (S.D.N.Y. Jan. 9, 2001)). Where the treating physician intends to opine about matters outside the course of treatment however, the witness must satisfy the requirements of Fed. Civ. P. 26(a)(2)(C), and disclose in advance the subject matter of the expected testimony, and a summary of the facts and opinions to be included in the testimony.

16

Fed. R. Civ. P. 26(a)(2)(C); *Olutosin*, 2019 WL 5616889 *5. Where the Rule 26 disclosure is lacking, the physician may still testify in limited fashion, solely as to that information the physician acquired through observation during treatment and limited to the facts obtained during treatment. *Olutosin* 2019 WL 5616889 at *6; *Barack v. Am. Honda Motor Co.*, 293 F.R.D. 106, 109 (D. Conn. 2013) *accord Ali v. Connick*, 11-CV-5297, 2016 WL 3002403 *7 (E.D.N.Y. May 23, 2016) (addressing the scope of treating physician testimony); *Motta v. First Unum Life Ins. Co.*, CV 09-3674, 2011 WL 4374544 *3 (E.D.N.Y. Sept. 19, 2011). Even this more limited form of treating physician testimony may address causation. *Olutosin*, 2019 WL 5616889 at *6; *Mangla v. Univ. of Rochester*, 168 F.R.D. 137, 139 (W.D.N.Y. 1996).

Here, Wal-Mart does not attack the testimony of Drs. Cartmill and Liguori on the basis of a failure to comply with Rule 26's disclosure requirements, or that these physicians will offer causation opinions "not gleaned" from their own treatment and diagnoses. *See* Defendant's Supplemental Brief, DE [64] at 1. Rather, Defendant argues that their testimony should be precluded because at their depositions they could not provide adequate medical opinions on causation with respect to Manzone's purported injuries. *Id.* As a result, their testimony is irrelevant. Defendant then goes on to attack Dr. Cartmill's testimony that he treated Plaintiff with concern that she had suffered a stroke, but when deposed testified that he could not conclude with a reasonable degree of medical certainty that Manzone actually had a stroke. With respect to Dr. Liguori, although his disclosure states that he will testify that Plaintiff had aggravated a pre-existing condition with her fall, at his deposition he testified

17

that he could not opine with a reasonable degree of medical certainty that she suffered any injury as a result of the events at Defendant's store. As a result neither witness should be permitted to testify at all.

The Court disagrees. According to Plaintiff, and not meaningfully addressed in Defendant's motion, a third physician, Dr. Baruch Toledano, will testify that Manzone, who had been a prior patient, came to him in October 2016, a month after the accident, suffering from certain symptoms that became aggravated after the fall. *See* Plaintiff's Supplemental Brief, ("Pl. Supp."), DE [65] at 2. Dr. Toledano's testimony, along with Plaintiff's testimony will address the issue of causation. *See id*. Drs. Cartmill's and Liguori's expected testimony appears to be consistent with Dr. Toledano's and Plaintiff's, and as such, will be relevant to the issues of damages. The testimony is therefore admissible.

In reaching this conclusion, the Court acknowledges Defendant's concern that that these treating physicians may testify that the fall caused Plaintiff to have a stroke or symptoms she exhibited afterwards despite their lack of certainty at their depositions. *See* Def. Mem. at 1, 8-9. In opposition Manzone specifically represents, consistent with the applicable standards, that "the only testimony being proffered through Doctors Cartmill and Liguori is going to be limited to the facts obtained . . . in the course of Plaintiff's treatment." Pl. Supp. at 2. Accordingly, there is no basis to grant the relief sought. In the event that the trial testimony veers from the expected course, Defendant may object, and in any event, the witnesses will no doubt be subject to rigorous cross-examination, as they have already been deposed. For all

of these reasons, Wal-Mart's motion to preclude the testimony of Drs. Cartmill and Liguori is denied.

## V. CONCLUSION

For the reasons set forth above, Defendant's motion *in limine* is granted in part and denied in part. Plaintiff's witnesses, Angela DiDomenico, Ph.D., Kevin Cartmill, M.D. and James Liguori, M.D. will be permitted to testify at trial in accordance with the limitations outlined in this opinion. The parties will appear for a phone conference with the Court on October 15, 2020 at 10:00 a.m. to address a trial date.

SO ORDERED.

Dated: Central Islip, New York
September 9, 2020

/s/ Steven I. Locke
STEVEN I. LOCKE
United States Magistrate Judge